## MARY E. LUETCHFORD, RESPONDENT, *v.* ELIZABETH LORD, APPELLANT, IMPLEADED WITH GEORGE D. LORD.

*Foreclosure of a mortgage given to pay a gambling debt — competency of the mortgagor to testify to personal transactions with the mortgagee, since deceased — rights of the heirs at law of the mortgagor in the premises.*

An action having been brought for the foreclosure of a mortgage upon real estate owned by Elizabeth Lord, who, together with her husband had given a mortgage thereon to secure the sum of $5,500, of which amount $1,100 had been lost by the said George D. Lord to William Allen, the mortgagee, at a game of chance called poker, George D. Lord, who was a party defendant, made default in pleading: Elizabeth Lord, his wife, who had interposed an answer alleging that the said bond and mortgage was void by reason of the fact that the said debt for $1,100 was included in the consideration thereof, on the trial of the action called George D. Lord as a witness, and he was asked in regard to personal transactions had between himself and William Allen, who had died prior to the trial. This evidence was objected to as incompetent under the provisions of section 829 of the Code of Civil Procedure.

It appeared upon the trial that at the time of the execution of the bond and mortgage the said George D. Lord and Elizabeth Lord had four children who would have been entitled to the real estate covered by the mortgage had Elizabeth Lord died immediately upon the execution of that instrument.

*Held,* that the evidence of George D. Lord in reference to the transactions with the deceased mortgagee was competent.

That under the provisions of sections 16 and 17 of 1 Revised Statutes (page 663), the bond and mortgage were void as to William Allen to the extent of depriving him of all rights thereunder, but not to the extent of restoring to the mortgagors the property which they had conveyed in violation of the statute, by the terms of which the security enured to the sole benefit of the children of the said Elizabeth and George D. Lord.

That the policy of the statute was not alone to deprive the mortgagee of any right to the mortgage, but at the same time to put it out of the power of the mortgagors to make any other like disposition of the property to the impoverishment of their heirs-at-law.

That the defendant George D. Lord had no right as tenant by the curtesy initate in this part of the real estate as against the mortgage.

That the children of Elizabeth Lord were not necessary parties to this action.

APPEAL by the defendant Elizabeth Lord from a judgment of the Supreme Court entered in the office of the clerk of the county of Monroe on the 12th day of May, 1890, after a trial before the court at an equity term thereof, held in the county of Monroe April 10, 1890, at which judgment was rendered, in favor of the

plaintiff that the real estate described in the complaint be sold at public auction and that out of the proceeds of such sale there be paid to the plaintiff for the payment of her mortgage debt, costs, disbursements and referee fees the sum of $5,805.55, with interest.

*William N. Cogswell*, for the appellant.

*Horace McGuire*, for the respondent.

Macomber, J.:

The mortgage, for the foreclosure of which this action is brought, was executed, together with the bond to which it is collateral, on the 6th day of September, 1877, by the defendant Elizabeth Lord, the owner of the mortgaged premises, and her husband, George D. Lord, by which they promised to pay one William Allen, the mortgagee, the sum of $5,500 on the 1st day of January, 1880, with interest, payable semi-annually. William Allen died in the month of September, 1888, leaving a last will and testament, and the executors thereof assigned such bond and mortgage to the plaintiff.

The only answer interposed is that of the defendant Elizabeth Lord, in which it is alleged that at the time of making the bond and mortgage the defendant George D. Lord had lost to William Allen, the mortgagee, the sum of $1,100 at a game of chance called poker, and that the consideration of the bond and mortgage to that amount was for the payment, or securing payment to said William Allen, of such moneys so lost in gaming. The defendant George D. Lord, who made default in pleading, and did not appear in the action, was called as a witness by his wife to prove this allegation of the answer. Objection was made thereto upon the ground that the witness was incompetent to testify to any communication or transaction between him and William Allen, deceased, under the provisions of section 829 of the Code of Civil Procedure. The objection was sustained by the court, the offer of the defendant was excluded, to which ruling the defendant duly excepted.

It appeared in evidence, and was so found by the trial judge, that at the time of the execution of the bond and mortgage Anna Eliza Lord, George Jarvis Lord, Jessie Lord and Durell Lord, were the children of the said Elizabeth Lord and George D. Lord, and that they would have been entitled to the real estate covered by the

mortgage had Elizabeth Lord died immediately upon the execution of that instrument, and that all of such children are now living.

The reason stated by the learned trial judge for excluding the evidence so offered is that the witness is interested in the event of the action, and hence rendered incompetent to testify to any transaction or communication between him and the deceased mortgagee. The cases cited by him are those which are applicable only to questions where, clearly, the proffered evidence would enure to the pecuniary benefit of the witness. A present reference to them would avail nothing, for we deem them inapplicable to the facts existing in this case. Yet, except for the statute pleaded in the answer, these authorities would be controlling and a safe guide for our decision. But the appeal presents a question, outside of such authorities, arising upon an ancient statute to which the trial court has not adverted. No case has arisen in this State or elsewhere, of which we are aware, which is an authority in the solution thereof.

By section 16 of the Revised Statutes (pt. 1, p. 663) All things in action, judgments, mortgages, conveyances, and every other security whatsoever, given or executed by any person, where the whole or any part of the consideration of the same shall be for any money or other valuable thing won by playing at any game whatsoever, or won by betting on the hands or sides of such as do play at any game, or where the same shall be made for the repaying any money knowingly lent or advanced for the purpose of such gaming or betting aforesaid, etc., are rendered utterly void, "except where such securities, conveyances or mortgages shall affect any real estate, when the same shall be void as to the grantee therein, so far only as hereinafter declared."

Section 17 is as follows: "When any securities, mortgages or other conveyances, executed for the whole or part of any consideration specified in the preceding section shall affect any real estate, they shall enure for the sole benefit of such person as would be entitled to the said real estate, if the grantor or the person encumbering the same, had died, immediately upon the execution of such instrument, and shall be deemed to be taken and held to and for the use of the person who would be so entitled. All grants, covenants and conveyances, for preventing such real estate from coming to or

devolving upon the person hereby intended to enjoy the same as aforesaid, or in any way encumbering or charging the same, so as to prevent such person from enjoying the same fully and entirely, shall be deemed fraudulent and void."

By the clause quoted from the sixteenth section, the mortgage in question was made void as to William Allen, so far only as is expressed in the seventeenth section, that is to say, if we understand correctly its meaning, this security was not so absolutely void, even by the terms of the sixteenth section, as to render it inoperative for any purpose whatever; but it was rendered void only so far as to deprive the mortgagee of all rights thereunder, but not void to the extent of restoring to the mortgagors the property which they had conveyed in violation of the statute. The seventeenth section saves the security for one purpose only, and that is for the benefit of such persons as would be entitled to the real estate if the grantors or persons incumbering the same had died immediately upon the execution of the mortgage. As applicable to this case, the mortgage was not available to the mortgagee, and yet the land covered by it was not restored to the mortgagors freed from such incumbrance. On the contrary, the statute declares that the same shall be deemed taken and held for the use and purpose of the four children of the mortgagors. The policy of the act manifestly was not only to deprive the mortgagee of any right to the security, but at the same time to put it out of the power of the mortgagors to make any other like disposition of this property to the impoverishment of their heirs-at-law.

As was said in *Ruckman* v. *Pitcher* (1 N. Y., 396) " the question is not upon the abstract rights and obligations of parties left free to contract, consent and act for themselves and bound by their admissions and acts. * * * The legislature has prescribed the rules which are to govern the case, and our inquiry must be what the rules are which the statute intends to apply. * * * The evident intention of the legislature was to discourage and repress gaming in all its forms, including bets and every species of wager contracts of hazard, as a great public mischief, calling for effective measures of prevention and remedy."

In *Storey* v. *Brennan* (15 N. Y., 527) the court says : " The object of the statute to prevent betting and gaming was the protection of

the public morals. The act being enacted for the public good, it should be so construed as to attain, as far as possible, the end proposed, by suppressing the mischief against which it was directed."

This statute works a transfer of the title to these securities from the mortgagee to the four children of Mrs Lord. If the bond and mortgage had been assigned by Allen's executors to the children of Mrs. Lord, the plaintiff could not, under the answer interposed, maintain this action. The absolute transfer thereof which the statute makes to them is not less effective as a defense. Some doubt was, at first, entertained by us whether it would not be necessary to bring the children into this action in order to make an effective application of the statute. But, on the whole, we think that whatever future action may be taken in their behalf, and whatever affirmative relief may therein be awarded to them, yet the answer is good as a simple defense, in analogy to the plea that the plaintiff was not the owner and holder of the securities, but that certain persons, naming them, were. If Mrs. Lord had died before this action had been brought, these children would be necessary and the principal parties defendant. They clearly would have the right to plead this statute, and, under the proof offered, to demand a judgment that their title should be entirely freed from the alleged indebtedness to Allen or his transferree.

But it is argued by counsel for respondent that if the evidence were admitted, and if under it the bond and mortgage were declared to be null and void, the witness would have a right of curtesy initiate in the real estate, and hence he is interested in the event of this action. This position, however, ignores the very substance and meaning of the statute against gaming, for if that act can be read for any efficient purpose, it is that its object is, from beginning to end, to deprive the mortgagors absolutely of all interest in the property, and to transfer it in its entirety to the persons presumed in law to be dependent for support upon the mortgagors. The testimony, therefore, so excluded, while it would defeat a recovery by this plaintiff, would not obliterate the bond and mortgage, but would adjudge them to belong to third persons. Whether they should be held by one person or another, is a question in which the witness has no pecuniary interest. Neither he nor his wife can recall, for the benefit of either, their unlawful act in executing these

instruments. The securities remain as binding obligations, but for the benefit, not of the mortgagee or his transferree, but of the persons named in the statute against gaming. If such is the true meaning of this act, then section 829 of the Code of Civil Procedure is no impediment in the way of a legal remedy for the legal wrong, and the witness is not disqualified from giving the evidence so offered.

It follows, therefore, that the judgment should be reversed and a new trial granted, with costs to the appellant to abide the final award of costs.

DWIGHT, P. J., and CORLETT, J., concurred.

Judgment appealed from reversed and a new trial granted, with costs to the appellant to abide the final award of costs.